STAN S. MALLISON (SBN 184191)
  stanm@themmlawfirm.com
HECTOR R. MARTINEZ (SBN 206336)
  hectorm@themmlawfirm.com
MARCO A. PALAU (SBN 242340)
  mpalau@themmlawfirm.com
JOSEPH D. SUTTON (SBN 269951)
  jsutton@themmlawfirm.com
ERIC S. TRABUCCO (SBN 295473)
  etrabucco@themmlawfirm.com
HILARY HAMMELL (SBN 291347)
  hhammell@themmlawfirm.com
MALLISON & MARTINEZ
1939 Harrison Street, Suite 730
Oakland, California  94612
Telephone: (510) 832-9999
Facsimile:  (510) 832-1101

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LUISA MEJIA, ELVIRA MUNGIA LOPEZ, MARIA BENAVIDEZ, and MARTIN MONTER, individually and acting in the interest of other current and former employees,<br><br>Plaintiffs,<br><br>vs.<br><br>SODEXO, INC., a Delaware corporation; SDH SERVICES WEST, LLC, a Delaware limited liability company (and wholly owned and controlled subsidiary of SODEXO, INC.), and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:16−cv−02120-LEK<br><br>**DECLARATION OF STAN MALLISON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: February 26, 2018<br>Time: ▓▓▓ a.m.<br>Courtroom: ▓<br>300 Ala Moana Blvd., Rm 338<br>Honolulu, HI 96850<br><br>Before the Honorable Leslie E. Kobayashi |

1

Mallison Decl. ISO Motion for Preliminary Approval of Class Settlement        *Case No.* 2:16-CV-02120

1.     I am an attorney at law licensed to practice before all courts of the State of California and am a founding partner of the Law Offices of Mallison & Martinez. My firm and I are counsel for the Plaintiffs in the above-entitled case. I am familiar with the above-captioned litigation and the dispute from which it arises. All statements made herein are on personal knowledge unless otherwise stated. If called as a witness, I could competently testify as to matters stated herein.

2.     This is a wage and hour class action settlement proposed for approximately 187 non-exempt laundry workers of Defendants. While, the primary focus of the case has been on rest and meal periods, and unpaid minimum wages, the proposed settlement would resolve all of the wage and hour claims at issue in this case for the time period of September 6, 2012 to the close of the Metro Park Laundry Facility in late 2014.

3.     This action was brought for alleged violations of California and Federal labor laws.

**I.     COUNSEL'S QUALIFICATIONS**

**A.     Mallison & Martinez Firm Description**

4.     The Law Offices of Mallison & Martinez is a class action law firm with offices in Oakland and Bakersfield, California.  This firm was created in 2005 by Stan Mallison and Hector Martinez, attorneys with extensive class action and complex litigation experience at: (1) Lerach Coughlin Stoia & Robbins, (2) Milberg, Weiss, Bershad, Hynes, & Lerach, (3) Van Bourg Weinberg Roger & Rosenfeld (the largest union side labor law firm in the country), (4) Carter & Garay (a boutique class action law firm), and (5) California Rural Legal Assistance (the largest federal legal services provider to farm-workers in the country).  The firm is nearly exclusively engaged in class action and private attorney general practice in employment law on behalf of employees.  We have six full time attorneys on staff (five of whom are fluent Spanish speakers), and numerous support and paralegal staff including a translator for Mixteco speaking clients and witnesses.  Mallison & Martinez researches and develops class action wage cases and litigates them often with prominent co-counsel.

5.     The firm employs a "research model" approach to wage and hour class action litigation. We do this by, where appropriate, relying heavily upon technology, investing enormous

amounts of time and energy into legal and factual investigations, both prior to filing and early in the litigation, and by developing comprehensive factual and legal expertise in the specialized areas in which we litigate.

6. The success of this model is exemplified by the following sample of cases the firm is currently litigating or has resolved and has served or is serving as Class Counsel or Co-lead Counsel (where specified):

a. *In re: Rhodia Erisa Litigation*: (Southern District of New York). This was an ERISA Class Action on behalf of 3,945 workers of Rhodia, Inc. Appointed Co-lead Counsel with Robbins Umeda & Fink. (Class settlement approved for $2.4 million).

b. *In re Milgard* (Los Angeles Superior Court). This was a wage and hour class action on behalf of approximately 1000 factory workers. (Class Settlement of $5 million approved).

c. *Ibañez et al. v. Food Specialists Inc. et al*.: (Alameda Superior Court - Complex). This was a class action wage and hour case on behalf of 950 food service employees of Scott's Seafood Restaurants. (Class settlement approved for $1.485 million).

d. *Korbel Winery*: (Eastern District of California). This was a mid-sized wage and hour class action case involving approximately 600 winery workers. (Class settlement approved for $750,000).

e. *Miranda et al v. Don Roberto Jewelers* (Santa Barbara Superior Court). This was a retail worker's wage and hour class action involving approximately 1400 retail workers. (Class settlement granted final approval for $1.225 million).

f. *Morales v. Stevco, Inc*.: (Eastern District of California): This was a mid-sized wage and hour class action settlement for grape field workers. ($925,000 settlement granted final approval).

g. *Rodriguez v. DM Camp*: (Eastern District of California): This was a mid-sized wage and hour class action settlement for grape field workers. ($675,000 settlement granted final approval).

h. *Glenn Block v. eBay, Inc*.: (Santa Clara Superior Court). This was a consumer class action case filed on behalf of several numerous eBay consumers who were impacted by eBay's "bid against yourself" policy (co-counsel Lerach Coughlin Stoia Geller Rudman & Robbins). (Class settlement approved for $2.1 million).

3

Mallison Decl. ISO Motion for Preliminary Approval of Class Settlement        *Case No.* 2:16-CV-02120

i. *Benitez et al. v. Wilbur et al*.: (Eastern District of California). This was a class action wage and hour case on behalf of a class of dairy workers who were (1) not paid all wages largely due to being paid a fixed salary without regard to actual hours worked and (2) due to the employer's failure to record time. ($400,000 settlement granted final approval.)

j. *MAT Landscape*: (San Joaquin Superior Court). This was a mid-sized wage and hour case involving hundreds of Landscape workers. Mallison & Martinez is co-counsel with California Rural Legal Assistance. (Settlement for $700,000 approved)

k. *Vasquez v. Coast Roofing*: (Eastern District of California).  This was a mid-sized wage and hour class action case involving hundreds of roofing workers. (Class settlement for $250,000 granted final approval).

l. *Lara et al. v. Sierra La Verne Country Club*: (Los Angeles Superior Court). This was a mid-sized wage and hour class action on behalf of service workers. Mallison & Martinez is originating counsel and co-counsels the case with Rastegar & Mattern. ($725,000 class settlement approved).

m. *Morales v. Stevco, Inc.*: (Eastern District of California): This was a mid-sized wage and hour class action settlement for grape field workers. ($925,000 settlement granted final approval).

n. *Rodriguez v. DM Camp* (Eastern District of California): This was a mid-sized wage and hour class action settlement for grape field workers. ($675,000 settlement granted final approval).

o. *Zacapa v. Don Roberto* (Santa Barbara Superior Court). This was a wage and hour class action involving approximately 1000 retail workers. (Class settlement granted final approval for $875,000).

p. *TBS Couriers*: (Alameda County Superior Court). This was a set of two mid-sized wage and hour class action cases involving hundreds of delivery drivers. Mallison & Martinez is counsel in these coordinated actions (trial judgment awarded for more than $4.7 million).

q. *Lara et al. v. Sierra La Verne Country Club*: (Los Angeles Superior Court). This was a mid-sized wage and hour class action on behalf of service workers. Mallison & Martinez is originating counsel and co-counsels the case with Rastegar & Mattern. ($725,000 class settlement approved).

r. *La Perla Tapatia*: (Eastern District of California): This was a wage hour class action for grocery workers.  Final approval granted for wage and hour class action settlement for $400,000.

s. *Rosales v. El Rancho; Cruz, et al v. El Rancho (1:12-cv-01934)*: (Eastern District of California): This is a wage and hour class action on behalf of grape workers.  (Final approval of $2.3 million class settlement)

t. *Ontiveros v. Zamora*: (Eastern District of California): This was a wage and hour class action on behalf of a class of mechanics involving failure to pay minimum wage and overtime. ($2.2 million class settlement approved)

u. *Jacobo v. Packaging Plus Wage and Hour Class Action*: (San Benito Superior Court): This was a wage and hour class actions on behalf of a class of produce packing workers involving rest and meal period violations. ($4.5 million class settlement approved)

v. *Rojas et al. v. Sunview Vineyards* (Eastern District of California): This was a large wage and hour class action on behalf of approximately 10,000 fieldworkers. (Class Settlement of $4.55 million approved).

w. *Larios v. Piatti Restaurants* (Marin County Superior Court): Final approval granted for wage-and-hour class action settlement for $2.5 million involving thousands of restaurant workers throughout the state of California.

x. *Munoz v. Giumarra Vineyards* (Eastern District of California): This was a large wage and hour class action on behalf of approximately 15,000 fieldworkers. (Class Settlement of $6.1 million plus interest granted final approval).

The above listing is just a sample of the more than 100 wage and hour class and representative actions cases that Mallison & Martinez have been involved with since forming in 2005.

**B.     Attorneys on the Case**

7.     I, Stan Mallison, am a former meat cutter and baker. After returning to school I received my Bachelor of Art degrees in Philosophy and Political Science from the California Polytechnic University at Pomona, California in 1990, graduating magna cum laude and first in both departments. I earned my Masters in Economics from the University of California at Riverside in 1993, where I had been admitted to, and substantially progressed through, the Economics Ph.D. program. I earned my law degree from Stanford University in 1996, graduating with honors. During law school, I interned with the National Labor Relations Board ("NLRB"), both at the Division of Judges in San Francisco as well under the direct supervision of Chairman of the NLRB William B. Gould in Washington D.C.

8.     Between 1996 and 1998, I worked in complex labor and employment litigation for the law firm of Van Bourg, Weinberg Roger and Rosenfeld, the largest union-side labor law firm in the country.

9. From 1998 to 2004 I worked for Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss") and joined Lerach Coughlin Stoia & Robbins ("Lerach Coughlin") when the Milberg firm divided in 2004, working there until February 2005. My work at these firms consisted of class action and private attorney general act work and included work on complex and large cases including: *In Re Enron Securities Litigation* ($7.2 Billion settlement); *Mariana Island Garment-Worker Cases* (a $20 million wage and hour settlement on behalf of 20,000 migrant workers on the island of Saipan); *In Re 3Com Securities Class Action* ($259 million settlement), a Federal Court challenge to the sufficiency of Federal Department of Transportation's NAFTA Truck safety regulations; *In re Pemstar Securities* (settlement of $12 million); *In re Block v. eBay* (settlement of $2.1 million); a Federal Court challenge to Presidential Executive Order re: Project Labor Agreements, and dozens of other cases. As a result of my expertise in economics, I spent a considerable amount of my time at Milberg Weiss and Lerach Coughlin as liaison to economic experts and I continue in that role at Mallison & Martinez.

10. Mr. Martinez received his Political Science Bachelor of Art degree in 1993 from the University of California at Davis. Mr. Martinez grew up in a socially conscious farm-worker community, which motivated Mr. Martinez to work for the benefit of low-wage workers. Beginning in the mid-nineties, at the California Institute for Rural Studies, Mr. Martinez conducted extensive research on California's agricultural industry and the substandard environmental, health and working conditions and its impact on farmworkers and their families. Mr. Martinez then attended law school and earned his law degree from the Golden Gate University School of Law in 1998. During his law studies, he worked as a law clerk with Van Bourg, Weinberg, Roger and Rosenfeld, the largest union-side labor law firm in the country, under the direct supervision of named partner David Rosenfeld. From 1999 to 2004, Mr. Martinez worked at California Rural Legal Assistance, Inc. ("CRLA"), the largest non-profit law firm dedicated to farm-worker issues in the country. His work at CLRA included numerous representative private attorneys general actions under California's Unfair Competition Law, Business & Professions Code Sections 17200 *et seq.*, which were brought on behalf of thousands of agricultural employees and the general public. During his time with CRLA, Mr. Martinez was nominated for and received

a fellowship with the California Wellness Foundation Violence Prevention Initiative, for his work with farm-worker youth throughout California.

11. Mr. Palau is admitted to practice law in California and New York. He represents workers in wage and hour class actions and employment discrimination. Mr. Palau earned his law degree from Columbia University, New York in 2005, where he served as an Editor for the Columbia Human Rights Law Review and Co-Managing Editor for the Jailhouse Lawyer's Manual (Spanish ed.). He earned MBA and BS degrees from California State University in 1999 and 1997, respectively. Prior to joining Mallison & Martinez, Mr. Palau was a staff attorney with California Rural Legal Assistance ("CRLA"), where he represented indigent individuals in civil rights matters, including federally subsidized housing and workers' rights issues. Mr. Palau is currently litigating dozens of class actions and employment discrimination cases as an experienced mid-level wage and hour attorney at Mallison & Martinez. Mr. Palau was named "Rising Star" in Northern California by Super Lawyers Magazine in 2014.

12. Mr. Sutton is a mid-level associate at Mallison & Martinez and is admitted to practice before the California State Courts and the United States District Courts for the Northern, Central and Eastern Districts of California. Mr. Sutton graduated from the University of San Francisco School of Law, where he was a member of USF's Traynor Appellate Advocacy and ABA Labor and Employment Trial teams. He earned a B.A. from Hanover College in Anthropology and a M.A. in Latin American Studies from the University of California, Berkeley. Prior to joining Mallison & Martinez in 2011, Mr. Sutton practiced at Liberation Law Group, P.C. in San Francisco, where he represented clients at all stages of litigation, including trial and mediation. Mr. Sutton's practice is focused on employment litigation, including wage and hour, sexual harassment and discrimination matters.

13. Mr. Trabucco is an associate at Mallison & Martinez and is admitted to practice before the Northern and Eastern Districts of California and the California State Courts. Mr. Trabucco earned his B.A. in Political Science and Spanish from the University of California, Berkeley. Mr. Trabucco earned his J.D. from the University of California, Berkeley School of Law (Boalt Hall). Prior to joining Mallison & Martinez, Mr. Trabucco worked at Locker Folberg, LLP

with Miles Locker, the former head of the legal department of the California Labor Commissioners' office. Mr. Trabucco also served as a Bridge Fellow at the Legal Aid Society-Employment Law Center in the Wage and Hour Enforcement Litigation Program. Mr. Trabucco's practice is focused on employment litigation, including wage and hour class actions, as well as individual sexual harassment and discrimination matters.

14. Hilary Hammell is an associate at Mallison & Martinez and is admitted to practice before the California State Courts, the Northern District of California, and the Eastern District of California. Ms. Hammell earned her Bachelor of Arts from Yale University in 2004 and her J.D. with High Honors and Order of the Coif from the University of Washington School of Law in 2012. While at the University of Washington, Ms. Hammell was a William H. Gates Public Service Law Scholar, was a Legal Writing Fellow and received CALI awards and Student Leadership awards. In 2009 she was awarded the Sarah Weddington Prize for New Student Scholarship in Reproductive Rights by Law Students for Reproductive Justice. She has published law review articles in the New York University Review of Law and Social Change and in Women's Rights Law Reporter. Ms. Hammell's experience prior to joining Mallison & Martinez includes serving as a law clerk for Judge Stephanie Seymour on the United States Court of Appeals for the Tenth Circuit, working as a Skadden Fellow for two years at Public Advocates, and serving as Senior Staff Attorney at Open Door Legal (formerly Bayview Hunters Point Community Legal) for two years. Ms. Hammell is fluent in Spanish. Her practice is focused on employment litigation, including wage and hour class actions, as well as individual harassment and discrimination matters.

15. Mallison & Martinez has had, and continues to have adequate resources to vigorously prosecute this case on behalf of the Class representatives and the Class members. Plaintiffs' counsel has spared no expense nor taken any short cuts in this litigation and has hired a prominent database consultant for this case to aid in the confirmatory discovery in this case.

16. Neither I, nor any member of the firm, have any personal affiliation or family relationship with the Plaintiffs and proposed Class Representatives. The only relationship with these plaintiffs in this current litigation is the attorney-client relationship.

8

Mallison Decl. ISO Motion for Preliminary Approval of Class Settlement      Case No. 2:16-CV-02120

17. The firm chose the proposed class representatives because we believed that they provided a good representation of the breadth of the class, both in terms of job categories, geographic location, and employment status.

18. The class representatives carried out all required tasks in this case to help us pursue this action, providing us with information, documents, insights, opinions, and necessary decisions to make this case successful. The class representatives spent considerable time in their efforts on behalf of the class and deserve the modest incentive award requested in this case.

## II.   PRIMARY ALLEGATIONS OF THE COMPLAINT

19. The core of the Complaint's allegations revolve around Defendants' failures to provide full rest and meal periods due to donning and doffing issues as well as a "ready at station" policy. As a result of the shortened rest and meal periods (and unpaid time), Plaintiffs allege that Defendants failed to pay all wages, premium wages, and derivative penalties. These allegations present common questions of law and fact throughout the class.

### A.   Failure to Pay Minimum Wage

20. This is a wage and hour class action brought on behalf of Defendant's non-exempt laundry workers in California on a broad range of claims. A core focus of this action involves Defendant's alleged failure to pay wages for donning and doffing time at start and end of each work shift.

21. California law requires that employees be paid for all hours worked, whether the work is required or employees are suffered or permitted to work. Cal. Code Reg. tit. 8, §§ 11080, subd. (2)(G), 11130, subd. (2)(G); 11140, subd. (2)(G). The level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, determines whether the employees' time is compensable as "hours worked" under the Industrial Welfare Commission wage order, which defines hours worked as time during which the employee is subject to the control of the employer. *Morillion v. Royal Packing Co.*, 22 Cal.4th 575 (2000), *as modified*. When an employer fails to record all hours worked, employees may establish the hours worked solely by their own testimony, and the burden of overcoming such testimony shifts

9

to the employer. *Hernandez v. Mendoza*, 199 Cal.App.3d 721 (1988).

22. This practice also violated minimum wage requirements, and was the predicate for a host of derivative violations including wage statement violations (Labor Code § 226) and waiting time penalties (Labor Code § 203).

### B. Failure to Provide Rest Periods or Compensation in Lieu Thereof

23. Plaintiffs allege that Defendants' "ready at station" policy entailed donning and doffing prior to and after rest and meal breaks, effectively shortening these breaks. This is a core issue in this case. California Labor Code § 226.7 states:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.
> (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

24. The obligation to provide rest periods referred to in this section are also set forth in the Wage Order which states:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof … Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from wages.

25. Rest periods are considered hours worked and must be separately compensated, especially where employees are paid by the piece, as Plaintiff and the Class were here. *Bluford v. Safeway Stores, Inc.* (2013) 216 Cal.App.4th 864, 872.

26. Plaintiffs allege that they and the Class were not provided with the required paid, 10-minute rest breaks because Defendants' "ready at station" policy prevented a full 10 minute break.

10
Mallison Decl. ISO Motion for Preliminary Approval of Class Settlement          Case No. 2:16-CV-02120

**C.     Defendants Failed to Provide Plaintiffs and the Class with Lawful Full 30 Minute Meal Periods**

27.     In California, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . . ." IWC Wage Order 5-2001 §11(A). See also Labor Code § 226.7. Also, "[a]n employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." Cal. Lab. Code § 512. California Labor Code Section 512(a) and Wage Order 5-2001 of the Industrial Welfare Commission (IWC) require that meal periods be provided within the first 5 hours of work. Any doubt as to the timing of meal period was clarified by the California Supreme Court in *Brinker v. Sup. Ct.*, 53 Cal.4th 1004, 1042 (2012) (Labor Code § 512(a) requires that "first meal periods must start after no more than five hours."). Employers who fail to provide meal periods as required by the Wage Order must pay "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal . . . is not provided." IWC Wage Order 5-2001, § 11(B); Cal. Lab. Code § 226.7(b).

28.     If an employer fails to provide an employee a meal period in accordance with the applicable Wage Order and Labor Code § 512, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided. Cal. Lab. Code § 226.7.

29.     Plaintiffs allege that Defendants maintained a class-wide practice and policy that resulted in employees receiving meal periods that were less than thirty minutes. Approximately 25 minutes into their 30-minute meal breaks, a bell would ring signaling to workers that their 30 minute meal break was over and they were expected to leave the cafeteria and begin the walk back to the time clock and to don their protective clothing. By the time that 30-minutes had elapsed from the initial bell signaling the start of their lunch break, they were expected to standing at the time clock and were required to clock in on the minute. The result of this consistent, class-wide policy is that workers were consistently deprived of full 30-minute meal periods – having worked approximately 10 of these minutes doing tasks at Defendants' direction. As a result, Plaintiffs allege that there are meal period violations pursuant to California Labor Code § 512.

### D. Wage Statement Violations

30. Plaintiffs allege that Defendants violated Labor Code § 226 by failing to provide accurate, itemized wage statements, in that the wage statements do not account for the wages owed as a result of the above violations (and the others described in the complaints). In other words, Defendants failed to provide "accurate itemized statements" pursuant to California Labor Code section 226 because the wage statements:

> (a) Falsely understated the gross wages earned by failing to pay for all hours worked;
> (b) Falsely stated the net wages earned.

California Labor Code § 226(e) and (g) provides for penalties for these violations.

### E. Waiting Time Penalties

31. Plaintiffs also allege that Defendants failed to timely pay Plaintiffs and terminated class members their full pay at the time of termination. Plaintiffs believe that based upon the various violations, rest and meal, overtime or unpaid wages, essentially all terminated employees were not paid their full wages within 30 days of termination.

32. California Labor Code §§ 201 and 202 provide that such final wage payments must be made within a few days of such termination.  Plaintiffs allege that Defendants failed to timely pay Plaintiffs and the Class all of their wages due for work performed and for overtime and this failure continued through the time in which Plaintiffs and the Class quit or were discharged from their employment with Defendants.

## III. LITIGATION HISTORY OF THE CASE

33. Throughout this litigation, Plaintiffs' counsel has interviewed numerous witnesses and reviewed thousands of pages of documents and/or data from employees. Although, the allegations of the Complaint remain disputed between the parties, these interviews and documents provided Plaintiffs with what they believed to be a firm basis for the allegations of their complaint.

34. Plaintiffs conducted substantial additional investigation and discovery regarding class certification and the merits of their claims  Plaintiffs propounded several sets of discovery on

1  Defendants designed to obtain the critical information at issue in this case, i.e., paper and electronic
2  timekeeping and payroll information, and obtained the core payroll and timekeeping information.
3  Deconstructing, organizing and analyzing these voluminous records with Plaintiffs and other
4  witnesses strengthened counsel's understanding and negotiating position in this case. Defendants
5  also engaged in significant discovery to uncover the facts in this matter, including propounding
6  written discovery and deposing all of the Plaintiffs.

7      35.    The records demonstrated in an objective manner what occurred (in terms of hours
8  and wages) at the workplace at substantial times during the class period and served as a solid
9  foundation for a damage model in this case. The damage model provided a detailed analysis of
10  Defendants' payroll and timekeeping practices. Although laborious, it was the only means of
11  providing the detailed analysis necessary to obtain the favorable mediation results obtained. Based
12  on this analysis, Plaintiffs estimate the value of class wage claims with a substantial likelihood of
13  prevailing, and based on available data, to be approximately $1,020,000.

14

15  **IV.    SETTLEMENT**

16      36.    The parties have participated in an all-day mediation before mediator David
17  Rotman. Mr. Rotman was thoroughly apprised of the arguments and facts of this case by means of
18  extensive briefing and factual presentations, and the settlement at issue was created by Mr. Rotman
19  as a mediator's proposal. As a result, the parties agreed upon the proposed Settlement that
20  Plaintiffs now presenting to the Court for preliminary approval.

21      37.    Counsel believes the Settlement is reasonable, fair and adequate, as it provides
22  compensation to class members in proportion to the relative value of their claims. Of course, the
23  Settlement is a compromise figure, taking into account the risk associate with further litigation both
24  in determining the fairness of total Settlement as well as the propriety of other terms. The
25  Settlement covers approximately 187 employees who worked at the Metro Park Laundry Facility in
26  approximately late 2014.

27

28

38. Under the Settlement, Defendant is obligated to pay the Gross Settlement Amount of $600,000. Settlement § III.A.1. The settlement provides that all of the Gross Settlement Amount will be disbursed, and none of it will revert to Defendants. See Settlement, § III.E.11.

39. The Settlement provides for: payments to the named Plaintiffs (subject to court approval), in addition to their Settlement Shares, of up to $8,000 each as compensation for their role as Class Representatives (Settlement § III.B.2.); payments to Class Counsel of up to 1/3 of the gross settlement for their reasonable attorneys' fees, as well as up to $35,000 for their litigation expenses incurred in investigating and prosecuting the case, preparing for and negotiating at the mediation, conducting an elaborate damage analysis in this case, documenting the Settlement, securing approval of the Settlement, and related tasks (Settlement § III.C.2); and payment of the Settlement Administrator's reasonable fees and expenses (Settlement § III.C.3). All reasonable efforts will be undertaken by the Claims Administrator and by Class Counsel to ensure that class members claim and receive their funding in this case.

40. After the other amounts are deducted from the Maximum Settlement Amount, the "Net Settlement Amount" will be distributed to all Claimants on a *pro rata* basis based on (a) the Claimant's total number of workweeks of employment during the Class Period:

> **Calculation**. A Class Member's Settlement Share will equal the Net Settlement Amount times the ratio of the number of workweeks worked by the Class Member for Sodexo at Metro Park Laundry during the Class Period to the total number of workweeks worked by all Class Members for Sodexo at Metro Park Laundry during the Class Period, subject to the following adjustment: If a Class Member's employment at Metro Park Laundry terminated on or after September 6, 2013, then for purposes of calculating every Class Member's Settlement Share, that Class Member's number of workweeks will be doubled.

Settlement, § III.B.1.

41. Non-Participating Class Members, defined as Class Members who timely submit an Election Not to Participate, will receive no Settlement Share, their election not to participate will reduce neither the Gross Settlement Amount nor the Net Settlement Amount, and their respective Settlement Shares will be retained in the Net Settlement Amount for distribution to Participating Class Members on a pro rata basis relative to their Settlement Shares. See Settlement, § III.B.4. If

a Participating Class Member, defined as Class Member who does not timely submit an Election Not to Participate, does not submit a valid and timely Claim Form and therefore does not qualify as a Claimant, the Settlement Share that would have been paid to them if they had qualified as a Participating Class Member will also be distributed to Participating Class Members in amounts proportional to their Settlement Shares.  See Settlement, § III.B.3.

42.   If a Claimant fails to cash their Settlement Share check within one-hundred and twenty (120) days after the last mailing to them, the Settlement Administrator will send the Claimant a letter informing them that unless the check is cashed within sixty (60) days, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed.  See Settlement, § III.E.11. If the check remains uncashed by the expiration of the sixty-day period after this notice, the check proceeds will be redistributed to the class unless it is less than $20,000, in which case, it will be distributed to California Rural Legal Assistance, Inc. *Id*.

43.   After extensive review of the payroll and timekeeping documents produced in this matter, I believe that the settlement distribution is fair and reasonable given the circumstances of these cases and the strength and weaknesses of the various claims.

44.   I have reviewed its proposed method of distribution and has determined that, on the whole, it serves the purpose of providing a simple and readily determinable method for distribution, while also allowing for a distribution that corresponds closely to the alleged damages and likely recoveries, which are based upon various theories of liability. I have considered other, more complicated methods, but determined that although such methods may have some merit, that they were not without controversy and would likely lead to a myriad of objections regarding their formulation and implementation. Further this method will allow Class Members to review and confirm for themselves the number of months of employment. The formula employed in the Settlement is commonly used in wage-and-hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims that roughly correlate with the above formula.

45.   The scope of the release by all Participating Class Members (all Class Members other than those who elect not to participate in the Settlement) tracks the scope of Plaintiffs'

allegations and is not broader than the wage and hour claims at issue in the complaint. See Settlement, § III.F.2.

46. Any Class Member who so wishes may object to or comment on the Settlement; or elect not to participate in the Settlement. See Settlement, § III.E.3; Ex. 4. The Class Notice fully explains the objection/comment and exclusion procedures. See Class Notice, Ex. B.

## V. OPINION OF CLASS COUNSEL, PROPOSED REPRESENTATIVE, AND DUE DILIGENCE

47. Plaintiffs have conducted substantial investigation and discovery regarding class certification and merits, including a comprehensive pre-trial review for damage analysis. Plaintiffs' counsel is of the view that central to any certification, litigation, mediation or resolution of a wage and hour case is obtaining the core payroll and timekeeping records. Plaintiffs obtained the critical documents at issue in this case including Defendants' payroll and timekeeping information.

48. Much of the document review took place with Plaintiffs and other witnesses who guided counsel through their employee time and payroll records, strengthening Plaintiffs counsel's understanding of the case, as well as counsel's ability to litigate effectively.

49. Based on Mallison & Martinez's investigation and discovery in this case and in consultation with the proposed Class Representatives and experts, I am of the opinion that the class Settlement with Defendants for $600,000 is reasonable and adequate and is in the best interest of the class, in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendants, the amount of potential damages in this case, and success on the merits at trial. Defendants contests liability in this action, are represented by zealous and talented counsel, and are prepared to vigorously defend against these claims if the action is not settled. If the litigation proceeds, Plaintiffs would face significant risks. For example, even if Plaintiffs are successful in demonstrating the violations for the certified classes, there still a possibility that future legal development could lead to the Class being decertified by the Court. There is also a significant risk that Defendants would prevail in its asserted defenses.

50. The $600,000 Settlement provides for a substantial recovery for Class Members. Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation. In any case, continued litigation would clearly delay payment to the Class, and it is unclear whether additional damages would be obtained. As such, Plaintiffs' counsel believes that the Settlement with Defendant for the consideration and on the terms set forth in the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the significant risk of delay. There are additional clear risks in the ever-changing case and statutory law in this field. As such, the Settlement is in the best interest of judicial efficiency, as it would obviously eliminate a lengthy and intense class action lawsuit from this court's calendar.

51. Since being retained by the proposed Class Representatives, counsel has had regular discussions and meetings with them regarding the progress of this litigation, the merits of the claims and the defenses asserted by Defendants.

52. The Class Representatives have actively participated in the investigation of the issues in this case and the negotiations leading to the settlement of this matter. Plaintiffs' claims are essentially identical with the class. In particular, Plaintiffs' respective claims are essentially identical to all other class members and their claims are typical of such workers with the same common issues. Further, there is no known conflict between the Class Representatives and those of the other Class Members.

53. The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. The Settlement is the product of non-collusive negotiations. If the litigation proceeds, Defendant faces significant liability. For their part, Defendant contest liability in this action, are represented by talented counsel, and are prepared to vigorously defend against these claims if the action is not settled.

54. The Settlement provides for a guaranteed payment of $600,000. See Settlement, § III.A. The agreement states that if the total number of opt outs equals or exceeds five percent (5%)

17

of the Class, or a number of Class Members whose Settlement Shares would be worth five percent or more of the Net Settlement Amount, then Defendants shall have the option to treat the Agreement as void. See Settlement, § III.E.6.

55. Based upon my conversations with them, I know that Class Representatives believe that the Settlement is fair and reasonable to all former Defendant's workers and should be approved by the Court.

## VI. **FEES, EXPENSES, CLAIMS ADMINISTRATION, AND INCENTIVE AWARDS**

56. I have practiced class and representative action litigation on a near exclusive basis for approximately 18 years and am familiar with attorneys' fees, cost, and incentive award issues. I continue to co-counsel numerous cases with large class action firms and therefore interact with them on these issues regularly. I am a member of the California Employment Lawyers Association ("CELA") and am a member of the CELA wage and hour committee. I am therefore in regular contact with other California attorneys who practice in the field of wage and hour class actions. Based on my participation in these organizations, my past experience, and my personal knowledge of the practices of other California attorneys who file and prosecute wage and hour class actions, a percentage of the recovery contingency fee of the type requested here is common in small wage and hour actions, both individual and class. Such a fee is necessary given the expenses and risk of wage and hour litigation.

57. 100% of Mallison & Martinez's legal practice involves legal work that is on a contingency fee basis. Despite my firm's strong public interest perspective, we would not have agreed to represent plaintiffs in this case on a contingency fee basis if we weren't confident that we would be awarded a contingency fee of approximately 1/3 of the potential recovery if we were successful in our efforts. The notice makes clear that Plaintiffs' counsel will be requesting up to 1/3 of the gross settlement amount. The Court can determine at the final approval stage the exact amount of fees justified in this case. Plaintiffs into to make a showing for whatever fee requested based upon this Court's analysis.

58. Counsel, including both Plaintiffs' counsel firms, have incurred substantial costs in this case. A large portion of the costs in this case relate to mediation fees, electronic research costs, massive scanning and discovery costs, and Plaintiffs' other expert discovery and investigative costs. The remaining costs are modest and typical of a case like this and include filing fees, travel expenses, service costs, etc. The notice indicates the maximum $35,000 that Plaintiffs' counsel will apply for. At the final approval hearing, Plaintiffs' counsel will make a formal motion with regards to a specific costs request and the court can determine the exact amount appropriate for reimbursement.

59. The proposed maximum request for attorneys' fees and reimbursement of costs and expenses are reasonable in light of the time and expense expended achieving the substantial benefits and should be approved or can be trimmed to an appropriate level at the final approval hearing. This case involved four years of litigation and involved two law firms. At the final approval, Plaintiffs' counsel will provide justification for the amount requested and the court will hear objections if any. Class Counsel reached this result for the Class at significant risk to themselves of recovering no fee. Class Counsel was aware that the only way they would be compensated was to achieve a successful result. Yet, Class Counsel did not waiver in pursuing the interests of the Class, and invested the time and resources necessary to bring the Action to a successful conclusion.

60. The proposed Claims Administrator, Simpluris, has provided a bid of $6,244 to administer this Settlement. For purposes of the notice filed herewith, Plaintiffs' counsel has estimated the costs to be incurred by the claims administration at $15,000 to account for any unforeseen additional expenses which may be necessary and/or ordered by the court. Plaintiffs' counsel will provide an updated estimate at the time it files the Motion for Final Approval of Class Settlement, Attorneys' Fees and Administration Costs. In my experience, Simpluris' estimate is within normal ranges for the size and breadth of this proposed class action settlement.

## VII. **EXHIBITS**

61. Attached to this declaration as Exhibit 1 is a true and correct copy of the Settlement Agreement between Plaintiffs and Defendants. The Settlement includes the following exhibits:

62. A: CAFA Notice;

63. B: Notice of Proposed Settlement;

64. C: Claim Form;

65. D: Election Not to Participate

66. E: Proposed Order Granting Preliminary Approval

67. F: Proposed Order Granting Final Approval

68. Attached to this declaration as Exhibit 2 are true and correct copies of the description of California Rural Legal Assistance ("CRLA") taken from its webpage at *https://www.crla.org/*.

69. Attached to this declaration as Exhibit 3 is a true and correct copy of the bid submitted by the proposed Claim Administrator, Simpluris.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: January 29, 2018           By:   /s/   *Stan S. Mallison*
                                         Stan S. Mallison